# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**MICKEY GOODSON,**

   *Plaintiff,*

**v.**                                                          **CASE NO.: 4:24-cv-117-RH-MJF**

**LOVE MANAGEMENT COMPANY, LLC,**

   *Defendant.*

_____/

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Mickey Goodson, hereby sues Defendant, Love Management Company LLC d/b/a Allegro Senior Living, and alleges:

### NATURE OF THE ACTION

1. This is an action brought under Chapter 448, Florida Statutes.

2. This action involves claims which are, individually, in excess of fifty thousand dollars ($50,000.00), exclusive of costs and interest.

### THE PARTIES

3. At all times pertinent hereto, Plaintiff, Mickey Goodson, was a resident of the State of Florida, and was employed by Defendant. Plaintiff is a protected whistleblower due to her objecting to and/or refusing to participate in practices of

Defendant that were in actual or suspected violation of one or more laws, rules or regulations. Plaintiff suffered retaliation after reporting said practices.

4.  At all times pertinent hereto, Defendant, Love Management Company LLC d/b/a Allegro Senior Living conducted business in the State of Florida. At all times pertinent to this action, Defendant was an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5.  Plaintiff satisfied all conditions precedent prior to bringing this action.

## STATEMENT OF THE ULTIMATE FACTS

6.  Plaintiff, a protected whistleblower, began her employment with Defendant on or around August 9, 2022, and held the position of Resident Services Director at the time of her wrongful termination June 26, 2023.

7.  Despite her stellar work performance during her employment with Defendant, Plaintiff was subjected to disparate treatment, different terms, and conditions of employment, and held to a different standard because she reported and objected to Defendant's unlawful employment activities, and was subjected to retaliation thereafter.

8. The retaliation came at the hands of, specifically but not limited to, Executive Director Laurie Jordan, and Vice President of Operations Debbie Michelet.

9. Defendant's facility is purposed for seniors who can live independently, or with minimal assistance.

10. Plaintiff served as a committed and dedicated employee, with 30 years worth of experience in the field of nursing.

11. In December 2022, Jordan was hired as Executive Director.

12. In January of 2023, Jordan approached Plaintiff to request authorization for a prospective resident who did not meet the facility's placement criteria. Plaintiff objected to this proposal, citing the prospective resident's need for additional medical care that Defendant could not provide. Plaintiff communicated to Jordan that admitting this prospective resident in the facility would pose risks not only to the proposed resident, but also to other residents and staff members.

13. On February 2, 2023, Plaintiff was unfairly targeted with an unfounded corrective action initiated by Jordan, taking the form of a written reprimand accompanied by one year of probation. The written reprimand alleged that Plaintiff had engaged in verbal abuse towards a resident and family members, causing unwarranted distress. Plaintiff, maintaining her professional integrity, refused to

sign the reprimand, asserting that the documented allegations were both false, and unprecedented in her thirty-year nursing career.

14. Jordan approached Plaintiff later that day, extending an apology and assuring Plaintiff that the matter would be rectified. It is apparent that this baseless corrective action constitutes a thinly-veiled act of retaliation by Jordan. This retaliation can be traced back to Plaintiff's refusal to acquiesce to Jordan's request in January of 2023, where Plaintiff declined to authorize the admission of a potential resident who did not meet the criteria for placement within the facility, and who would not have had his/her medical needs properly assessed or treated.

15. On June 1, 2023, Plaintiff reported Jordan's objectional conduct to Michelet by email. The actions in question were not merely objectionable but also were actual or suspected violations of laws, rules and/or regulations.  Specifically, Jordan knowingly accepting non-refundable deposits from prospective residents who did not meet the established criteria for admission to Defendant's facility. Subsequently, Jordan engaged in the manipulation of medical intake forms for said prospective residents, thereby falsely qualifying them for placement within Defendant's facility. Regrettably, despite the reported misconduct, no corrective actions were taken.

16. Plaintiff's primary concern extended beyond the unethical acceptance of funds; it encompassed a profound misapprehension of the safety and well-being of both potential residents, and the existing residents and staff members.

17. After Plaintiff's email to Michelet reporting Jordan's troublesome conduct, there was a noticeable shift in Jordan's behavior towards Plaintiff which suggested an awareness of the reported concerns. Jordan commenced a façade of affability towards Plaintiff, characterized by insincere niceties, and condescending compliments.

18. On June 18, 2023, Plaintiff conducted a meeting with a returning resident and the resident's daughter. During the course of this meeting, Plaintiff conveyed to the resident's daughter that, based on the established criteria, her father did not qualify for placement within the facility. The daughter had nonetheless been previously informed by Jordan that her father met the requisite criteria. Defendant, not being a nursing home or medical facility, lacks specific security measures such as locks on doors which would be needed for the potential patient.

19. The aforementioned incident caused distress to the daughter of the returning resident. She expressed her dissatisfaction and declared her intention to address the matter with Jordan, citing concerns over the provision of inaccurate information regarding her father's re-placement in the facility.

20. Thereafter, Plaintiff once again reported Jordan's objectional actions to Michelet through email. This action was taken in response to Jordan providing inaccurate information to the returning resident and his daughter. Additionally, Plaintiff's care staff also brought concerns to Plaintiff about the approval of this resident's return. Their apprehensions were not limited to the safety of the other residents, but extended to concerns about their own safety as well. Regrettably, no corrective action resulted.

21. Plaintiff specifically reported violations of 59 *FL ADC* 59A-36.006, which is the Florida Administrative Code governing admission procedures and appropriateness of placement of patients within assisted living facilities such as the one operated by Defendant. Multiple patients were admitted to Defendant's facility in violation of 59 *FL ADC* 59A-36.006 despite Plaintiff's objections. The following is a sampling[1] of examples of patients who were admitted in violation of 59 *FL ADC* 59A-36.006 despite Plaintiff's objections:

    a. 59 *FL ADC* 59A-36.006(1)(a)(3) states that patients must be able to perform the activities of daily living with supervision or assistance if necessary. Defendant admitted and retained patients who were completely incontinent (both bladder and bowels) who were in no way

---

[1] This list is not exhaustive, and is not intended to be a complete account of every single patient who was admitted by Defendant over Plaintiff's objections.

capable of performing the activities of daily living without substantial assistance and constant supervision.

b. 59 *FL ADC* 59A-36.006(1)(a)(4) states that patients must be able to transfer, with assistance if necessary. Defendant had a "no lift" policy in place, yet still admitted and retained patients who required lifting for transfers.

c. 59 *FL ADC* 59A-36.006(1)(a)(7) states that patients who are a danger to themselves or others should not be admitted, yet Defendant admitted and retained patients who were known to be a danger to themselves or others. Defendant also admitted patients as independent when they in fact were incapable of ambulating without falling and injuring themselves. Defendant also admitted and retained patients with advanced dementia who required memory care, patients who were known to have increased sexual desires, (which also posed obvious risks to other patients) and patients who were known to escape. Given that Defendant had a no locked door policy, admitting patients known to escape presented obvious safety and security problems in addition to being contrary to law.

d. 59 *FL ADC* 59A-36.006(1)(a)(9) states that patients who are bedridden should not be admitted, but Defenant re-admitted patients from

extended care and rehabilitation facilities who were in fact bedridden, and who required the use of slide boards. Defendant's staff was not licensed to use slide boards.

22. Because Plaintiff reported and objected to Defendant's actions in accepting money for which it was not legitimately entitled in exchange for services it was not capable of providing, Plaintiff also reported that Defendant was engaging in criminal activity –namely theft and fraud, in violation of *Fla. Stat. Ann*. §§ 812.014, 817.15.

23. Plaintiff met with Jordan (at Jordan's behest) On June 21, 2023, which Jordan called in retaliation for Plaintiff reporting Jordan's actions. Michelet attended telephonically. During this meeting, Michelet announced that Plaintiff was being suspended pending further investigation.

24. On June 26, 2023, Plaintiff was unjustly terminated as a direct consequence of her engagement in whistleblowing activities. The only termination reasons offered by Defendant were clearly thinly-veiled pretext. Plaintiff did not commit any improper acts which would reasonably result in termination, and she similarly did not fail to commit any required acts for which one would reasonably expect to be terminated.

25. The termination notice was conveyed by Michelet and Jordan through a conference call. It is evident that this termination constitutes a clear act of

retaliation against Plaintiff due to her whistleblowing activities, involving the consistent reporting of Jordan's inappropriate and unlawful conduct to Michelet.

26. Plaintiff retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## PRIVATE WHISTLEBLOWER RETALIATION

27. Paragraphs 1 through 26 are incorporated herein by reference.

28. This is an action brought under §448.101, et seq., Florida Statutes.

29. As set forth in greater detail above, during the course of Plaintiff's employment, Plaintiff objected to certain practices of Defendant that were actual or suspected violation of laws, rules and/or regulations.

30. As a result of Plaintiff' objections, she was fired.

31. Plaintiff was terminated because she engaged in protected activity. Specifically, Plaintiff objected to, or refused to participate in, any activity, policy, or practice of Defendant which was in actual or suspected violation of a law, rule, or regulation and/or reported the violation and gave Defendant an opportunity to correct the problem. Instead of correcting the problem, Defendant doubled down and Plaintiff was terminated for said reporting.

32. The disclosures made by Plaintiff are protected under §448.102, Florida Statutes.

9

33. As a direct and proximate cause of Plaintiff's participation in the Whistle Blowing activities identified herein, Plaintiff has been damaged, which damages include but are not limited to lost wages, emotional pain and suffering, loss of the capacity for the enjoyment of life, lost benefits, and other tangible and intangible damages and every other kind of damage allowed by law. Plaintiff is entitled to injunctive/equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff awarding all legally-available damages for emotional pain and suffering to

    Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(f) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(g) award Plaintiff interest where appropriate; and

(h) grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 25th day of March 2024.

            Respectfully submitted,

            _____
            Adam Ellis
            Florida Bar # 35628
            MARIE A. MATTOX, P. A.
            203 North Gadsden Street
            Tallahassee, FL   32301
            Telephone: (850) 383-4800
            Facsimile:  (850) 383-4801
            adam@mattoxlaw.com